30 So.2d 184

Succession of COOKE.

No. 38276.

March 17, 1947.

R. A. Fraser, of Many, for opponent, appellant.

Cook, Clark & Egan, of Shreveport, for executors, appellees.

McCALEB, Justice.

R. L. Gay has appealed from a judgment dismissing his opposition to the final account of the executors of the Succession of Walter Evans Cooke. He claims that the succession is indebted to him in the sum of $25,312, representing additional income taxes assessed against him for the year 1930, for which Cooke had agreed to in-demnify and hold him harmless by written contract. The facts pertinent to a discussion of the questions involved in the case are as follows:

Prior to 1928, Walter Evans Cooke, a resident of Patterson, New Jersey, was engaged in the development of mineral leases in Sabine Parish, having invested with one L. M. Emlet over $300,000 in attempts to discover oil in paying quantities. During that period, R. L. Gay was employed as Field Foreman for Emlet. Failure of Emlet to obtain results dissatisfied Cooke and, early in 1928, he acquired from Emlet a large acreage of mineral leases and undertook the completion of drilling operations for his own account. When Cooke obtained the mineral leases in February 1928, Gay was engaged by him as Field Foreman. Two wells were completed by Gay and, in August 1928, Cooke and Gay entered into a verbal contract whereby it was agreed that, in consideration of the services performed and to be performed by Gay in the oil field, Cooke would give him, in addition to his salary, a one-third interest in the proceeds of all oil and gas produced from the properties. However, the amount which Gay was to receive, as the result of any production or from profits derived through the sale of oil or gas wells, was to be payable only after Cooke had been fully reimbursed for the $300,000 he had previously invested with Emlet and also for all the expenditures made by him in obtaining production.

Drilling operations were conducted under the above stated oral agreement and in 1929 a large production was obtained. On January 25, 1930, the holdings of Cooke and Gay were sold to Benedum-Trees Oil Company for a consideration of over $1,000,000, out of which Gay received $211,000 as his share of the profits.

Income tax returns for the years 1928, 1929 and 1930 were prepared and made for the alleged partnership of Cooke and Gay under the firm name of "R. L. Gay, Trustee". In the partnership return for 1930, wherein the $1,000,000 sale to Benedum-Trees Oil Company is accounted for, the sum of $300,000 (the amount for which Cooke was entitled to reimbursement for prior expenditures with Emlet) was deducted as part of the cost of the mineral leases before computation of the distributive shares of the partners. This deduction was subsequently questioned by the Internal Revenue Department of the United States for the reason that Cooke had charged off a like sum as a deductible loss from his personal income tax return in 1928. An investigation of the affairs of Gay and Cooke ensued which culminated in the return of an indictment against them, together with the public accountants who had prepared their tax returns, for conspiracy to defraud the United States of income taxes. This indictment was later dismissed as to all parties charged thereunder. However, the Department of Internal Revenue levied deficiencies in income taxes for 1930 against Gay and Cooke.

On November 2, 1934, Cooke and Gay entered into a written agreement of dissolution of their partnership which contained the following provision: "It is further understood and agreed that said First Party (Cooke) shall save, hold harmless, warrant and defend said second party (Gay) from and against the payment to the United States Government of any additional income tax assessed against him as a member of said partnership by reason of the deduction by said partnership of the sum of $300,000.00 in its income tax return for the year 1930." (Words in parenthesis ours.)

This covenant is the foundation of the opposition of Gay. He asserts that, had it not been for the disallowance by the Department of Internal Revenue of the $300,000 deduction, he would not have been assessed with a deficiency in income taxes for 1930 and that, therefore, Cooke's succession is liable to him by virtue of the warranty provision quoted above.

On the other hand, the executors of the succession contend, in the main, that the assessment of the deficiency against Gay was not founded upon the disallowance of the $300,000 deduction but that the assessment was due solely to the fact that he returned the sum of $111,938.18 as his share of the income received from the transfer to Benedum-Trees Oil Company when, in

truth and in fact, he received the sum of $211,000 net profit on the sale.

The executors make other contentions respecting an estoppel by Gay because of a stipulation he made with the government as to the correctness of the deficiency levied against him. However, we do not find it necessary to consider these points as it is manifest to us that the main contention of the executors is well founded.

It appears from the record that the Internal Revenue Department, in its investigation of the affairs of "R. L. Gay, Trustee", took the position that the original agreement between Gay and Cooke in 1928 did not effect the formation of a copartnership. This original agreement, as above stated, was that Cooke would employ Gay as Field Foreman in the development of the leases Cooke had acquired from Emlet and that, in case the enterprise was successful, Gay would receive one-third of the profits remaining after reimbursement to Cooke for the expenses of the operations plus $300,000 which he had previously expended with Emlet. Since Gay was to participate only in the profits and was not bound to share in any losses, the attorneys for the government evidently based their contention that a valid copartnership did not come into being until after the sale to Benedum-Trees Oil Company, on the provisions of Article 2814 of the Civil Code. But we need not here decide if the government was correct in its position respecting the formation of the copartnership as we

find the matter to be of no importance in determining whether the disallowance of the $300,000 deduction produced the effect claimed by Gay.

In 1930, when Gay and Cooke sold their interests to Benedum-Trees Oil Company, Gay actually received $211,000 from the sale. In the partnership return of 1930, it is reported that the distributive share of Gay from the sale of the mineral holdings amounted to only $111,938.18. This figure is finally reached after first deducting from the gross amount of the sale to Benedum-Trees Oil Company the sum of $676,549.60 consisting of claims, depreciation, obsolescence, depletion and other deductions, including the $300,000 reimbursement to Cooke in accordance with the original agreement of the parties. In the recomputation of the income of "R. L. Gay, Trustee", prepared by the Internal Revenue Department and set forth in its letter to Gay of August 31, 1940, the government disallows practically all of the $676,549.60 claimed as costs, depletion, obsolescence, etc. This recomputation of the distributive interest of Gay, resulting from the sale to Benedum-Trees Oil Company, shows that the gross receipts of the sale were $1,156,791.65. The cost of the various leases allowed by the government as a deduction amount to $45,733.97, thus showing a net profit of $1,111,057.68. Of this amount, the sum of $900,057.68 is asserted as taxable income of Cooke. This figure includes the $300,000 which was payable to

Cooke under his agreement with Gay. The amount taxable to Gay is computed at $211,000 which, according to the admitted evidence, is the exact amount Gay received as his share of the profit of the enterprise.

The Department of Internal Revenue, in its letter to Gay dated August 31, 1940, states the matter thus: "Included in that income are gross receipts of $1,156,791.65 received from the Benedum-Trees Oil Company by Mr. Cooke in January 1930 from the sale of certain oil properties, which pursuant to an agreement, Mr. Cooke was to get the first $300,000.00 representing his expenditures in prior years and the balance was to be divided two-thirds to Mr. Cooke and one-third to you. You actually received $211,000.00 of the net profits from those proceeds * * *".

The foregoing clearly reveals that the deficiency of $25,312 which was assessed to Gay did not in anywise result from the disallowance of the $300,000 deduction on the 1930 income tax return of "R. L. Gay, Trustee". The deficiency was based exclusively on the ground that Gay had actually received $211,000 and had only accounted for $111,938.18. The $300,000 which was deducted as a cost on the partnership return did not affect Gay's tax in any way because it was not charged against him either partially or otherwise in the re-determination of the tax by the Internal Revenue Department. The $300,000 was treated by the government (as it should have been in the first instance) to be income received by Cooke in which Gay was without interest.

The only evidence produced by Gay to support his claim is found in the testimony given by Mr. J. B. Maguire, a public accountant and tax advisor, who prepared the 1930 tax return of "R. L. Gay, Trustee". Mr. Maguire insists that the computation of the government on the re-determination of the income taxes of Gay for 1930 is incorrect and it is his theory that the disallowance of the $300,000 deduction on the 1930 partnership return has affected the amount of taxes which Gay owed the government for that year.

We have scrutinized the testimony of Mr. Maguire with care and find it difficult to perceive the theory upon which his opinion is founded. It is apparently his contention that, when the government disallowed the $300,000 item as a cost deduction from the gross amount received from the sale of the mineral leases, its action in so doing was not only incorrect but that it necessarily had the effect of increasing the taxable income of Gay. The reason given by the witness for his opinion is not at all clear but he seems to place the $300,-000 item in the category of a production cost in which Gay participated to the extent of one-third. This proposition, we find, cannot be sustained for the reason, above indicated, that the $300,000 cannot be considered as a cost item in any respect. Cooke owned the mineral leases in his own

right. His agreement with Gay was to permit the latter to participate in the profits of the venture after payment in full of costs of production and after reimbursement to him of $300,000 which he had expended in an enterprise with Emlet. Hence, the inclusion of the $300,000 item, as a cost of the property sold, in the tax return of "R. L. Gay, Trustee" for 1930 was clearly erroneous. But, even if it could be treated as an item of cost, the redetermination of Gay's tax would not have been affected by its disallowance as a deduction unless the item, or a part thereof, had been assessed against Gay as income or profit chargeable to him. Obviously, the warranty agreement was applicable only under the last-mentioned circumstance.

The foregoing views are fully sustained by the evidence. Mr. Fred R. Hettler, a certified public accountant and auditor, testified accordingly and we find his statement to be most convincing.

The judgment appealed from is affirmed.